# Lipman's Appeal.

Where the meaning of a devise is uncertain, the law adopts the principles of the intestate law; for whoever claims against the laws of descent, must show a satisfactory written title.

A testatrix devised specified property to a trustee for the benefit of her three sons during their lives, with remainders in trust for their children, if they should have any, and if not, for each other; she then gave other specified property to the trustee for the benefit of her three daughters, using the same words of remainder, and adding a separate use clause; she then devised to the same trustee the residue of her estate for the use of all her six children, "in the same way and manner, and under the same and like uses and trusts, as are hereinbefore set forth;" and one of the sons died without issue: *Held,* that his share of the residue was to be equally divided among all his surviving brothers and sisters.

APPEAL from the Orphans' Court of *Philadelphia.*

This was an appeal by Mary A. Lipman, Hyman L. Lipman, James Maull, Jr., and Louisa E. Maull his wife, and Anna E. Lehman, from the decree of the Orphans' Court, distributing the trust funds in the hands of William Crean, trustee under the will of Mary C. Lehman, deceased.

Mary C. Lehman died on the 29th June 1851, leaving six children, John C. Lehman, Edwin W. Lehman, James A. Lehman, Anna E. Lehman, Mary Ann (wife of Hyman L. Lipman), and Louisa E. (wife of James Maull, Jr.).

By her last will, dated the 18th July 1850, she devised as follows :—

"I give and devise unto my brother, William Crean, his heirs and assigns (certain specific real estate, here described). To hold the same, and every part thereof, unto and for the only proper use and behoof of the said William Crean, his heirs and assigns for ever. In trust, nevertheless, to receive, collect, recover, and receive the rents, income, and profits thereof, and pay over the same from time to time, when and as the same shall be got in and received, unto my three daughters, Anna Elizabeth Lehman, Mary Ann (wife of Hyman L. Lipman), and Louisa E. (wife of James Maull, Jr.), in equal third parts or shares for and during all the term of their natural lives respectively, for their own respective use and support, for which their own several receipts in their own names or in the name of any attorney duly authorized for that purpose, notwithstanding any present or future coverture, shall be deemed and taken to be valid and sufficient discharges therefor; and so that the same, or any part or portion thereof,

shall not be in any way subject to or liable for the debts, contracts, or engagements of any present or future husband which my said daughters respectively have or may hereafter have or take, or be in any way or manner whatever under the control, management, or interference of any such husband or husbands; and from and immediately after the decease of my said three daughters respectively, then in trust as regards the part or share of each of my said daughters so dying (to wit, one-third part of the said trust estate and property, and the investments thereof), to and for the only proper use of all and every the child and children, which my said daughters respectively may have and leave at the time of her or their decease, and the lawful issue of any of them who may then be deceased having left such issue, as tenants in common, their several and respective heirs, executors, administrators, and assigns for ever; such issue of any deceased child or children of my said daughters, respectively, taking, however, and only receiving such part or share thereof as his, her, or their deceased parent or parents would have had and taken, had she or they been then living. But in case of the death of either of my said daughters without leaving any child or children to survive her, then in trust to grant, convey, and assign the part and share of said trust estate of either of them my said daughters so dying, unto my then surviving daughters, and the lawful issue of either of them who may then be deceased, as tenants in common, their several and respective heirs, executors, administrators, and assigns for ever; such issue of my said daughters, respectively, taking, however, and only receiving such part or share thereof, as his, her, or their deceased parent or parents would have had and taken, had she or they been then living.

"Item.—I give, devise, and bequeath unto my said brother, William Crean, his heirs, executors, administrators, and assigns (certain other specific real estate, here described). To hold the same unto and for the only proper use and benefit of the said William Crean, his heirs, executors, administrators, and assigns. In trust, nevertheless, to collect, recover, and receive the rents, income, and profits thereof, and pay over the same from time to time, when and as the same shall be got in and received, unto my three sons, John C. Lehman, Edwin W. Lehman, and James A. Lehman, in equal third parts or shares, or at the option of the said trustees to pay and apply the same toward their maintenance and support, or the maintenance and support of either of them for and during all the term of their natural lives respectively, for their own respective use and support, for which their own several receipts, in their own names, or by attorney duly authorized for that purpose, shall be deemed and taken to be valid and sufficient discharges therefor, and so that the same or any part or portion thereof, shall not be in any way subject to or liable for their or

either of their debts, contracts, or engagements; and from and immediately after the decease of my said three sons respectively, then in trust as regards the part or share of each of my said sons so dying (to wit, one-third part of the said trust estate and property, and the investments thereof), to and for the only proper use of all and every the child and children, which my said sons respectively may have and leave at the time of his or their decease, and the lawful issue of any of them who may then be deceased, having left such issue as tenants in common, their several and respective heirs, executors, administrators, and assigns for ever; such issue of any deceased child or children of my said sons respectively, taking, however, and only receiving such part or share thereof as his, her, or their deceased parent or parents would have had and taken, had he, she, or they been then living. But in case of the death of either of my said sons without leaving any child or children to survive him, then in trust, to grant, convey, and assign the part and share of said trust estate of either of them, my said sons so dying, unto my then surviving sons, and the lawful issue of either of them who may then be deceased, as tenants in common, their several and respective heirs, executors, administrators, and assigns for ever, such issue of my said sons respectively taking, however, and only receiving such part or share thereof, as his, her, or their deceased parent or parents would have had and taken, had he or they been then living.

"Item.—It is my will and intention, that in the event of the death of either of my said six children, as aforesaid, the part or share of said trust estate and premises of either of them so dying, which shall become vested in my said then surviving children as above expressed, shall accrue to, be taken and held by the said William Crean, trustee, as aforesaid, or any future trustee who may hereafter be appointed in his stead, for the uses of this my will, upon the same trusts and under the same limitations in all respects, as if the same had been part of their said original share of said trust estate and premises.

"Item.—All the rest, residue, and remainder of my estate, real, personal, and mixed, whatsoever and wheresoever, of which I may die seised or possessed, I give, devise, and bequeath unto my said brother, William Crean, his heirs, executors, administrators, and assigns. In trust, nevertheless, for the separate use and support of my said six above-named children in the same way and manner, and under the same and like uses and trusts as are hereinbefore set forth, limited, and declared with respect to the portion of my estate, devised in trust for my said children respectively, and with the same and like effects as if the said trusts were herein again at large repeated."

John C. Lehman, one of the said three sons, died on the 25th

June 1854, unmarried and without issue, leaving his two brothers and three sisters surviving; and the question presented to the court below was, whether his share of the residuary estate of the testatrix went to his two surviving brothers, or to the brothers and sisters jointly.

The auditor awarded this share of the residuary estate to the surviving brothers; and the Orphans' Court dismissed the exceptions filed by the sisters, and decreed distribution accordingly. From this decree the present appeal was taken.

*Hirst*, for the appellants.—The general intention of the testatrix was to devise *all her estate in trust for her children*, and she has made three classes, viz.: one of daughters, for whose benefit certain specific devises are made; a second, of sons, for whose benefit also certain specific devises are made; the third, of all her six children, for whose benefit the residuary estate is devised—with survivorship among the members of each class.

No stronger example can be given of the support which the law gives to the intention of a testator in providing for survivorship among classes, than is afforded by the opinion of Ld. J. TURNER, in Edwards *v.* Tuck, 21 *Eng. L. & Eq.* 138, cited by the appellees. There was a gift of an estate in distinct moieties to the children of E. and the children of C., the share of every such child dying, &c., to go to the survivor or survivors of the said children. Ld. J. TURNER decided that when a child, belonging to either class, died, his share should go to the survivors of the same class, against the natural construction of the words.

Now here, the testatrix, after creating for certain purposes two distinct classes in the previous devises, makes a third class in the residuary devise, and therefore the survivorship among this class should be *co-extensive* with the class itself, as is the case in both the previous devises.

*H. Wharton* and *E. K. Price*, for the appellees.—It is an established rule for the construction of wills and deeds, that words of reference or relation in a devise or gift, to a previous devise or gift, operate to transplant the limitations or conditions attached to the latter, into the former, just as though they had been expressly repeated. *Verba relata hoc maxime operantur per referentiam ut in eis inesse videntur: Co. Litt.* 359 a; Llewellen *v.* Earl of Jersey, 11 *M. & W.* 183, 188. Thus "If a man give lands to A., *et heredibus de corpore suo*, the remainder to B., *in forma prædicta*, this is a good estate tail in B.; for that *in forma prædicta* do include the other:" *Co. Litt.* 20, (*b*) s. p. 1 *Rolle Abr.* 838, citing 20 Hen. 6, 36; Goodtitle *v.* Woodhull, *Willes* 592; Meredith *v.* Meredith, 10 *East* 503; Lisle *v.* Gray, 2 *Lev.* 223; Macnamara *v.* Ld. Whitworth, *Geo. Cooper Ch. C.* 241; Roe *v.* Clayton, 6 *East*

628 ; Longdon *v.* Simson, 12 *Ves.* 295 ; Young *v.* Combe, 4 *Ves.* 101 ; Milsom *v.* Awdry, 5 *Ves.* 565.

Upon a similar principle, where legacies are given by way of substitution or in addition, they are held to be subject to the same conditions and limitations, and to be paid at the same period, &c., as the original legacies : Leacroft *v.* Maynard, 1 *Ves. Jr.* 279 ; Crowder *v.* Clowes, 2 *Ves. Jr.* 429 ; Long *v.* Long, 3 *Ves.* 73 ; Cooper *v.* Day, 3 *Meriv.* 154 ; Chatteris *v.* Young, 6 *Madd.* 30 ; 1 *Roper Leg.* 586 ; Day *v.* Croft, 4 *Beav.* 561 ; Warwick *v.* Hawkins, 13 *Eng. L. & Eq.* 174 ; Davis *v.* Cain, 1 *Ired. Eq.* 304.

The next principle of construction to which the appellees would call attention, is that general words or limitations in a devise, applied to a variety of subjects, are to be read distributively, *reddendo singula singulis* : Justice Wyndham's Case, 5 *Co.* 7 *b* ; Weale *v.* Lower, *Pollexfen* 65, 67 ; Roe *v.* Aistrop, 2 *Wm. Black.* 1228 ; Cook *v.* Gerrard, 1 *Saunders' R.* 170 ; Doe *v.* Brazier, 5 *Barn. & Ald.* 64 ; Doe *v.* Bartle, *Id.* 492 ; Doe *v.* Cholmondeley, 11 *East* 322 ; Freeman *v.* Chandos, 1 *Cowp.* 362. An illustration of this rule may be found in Edwards *v.* Tuck, 21 *Eng. L. & Eq.* 138.

The opinion of the court was delivered by

LOWRIE, C. J.—Mrs. Lehman's will gives certain specified property to a trustee for the benefit of her three sons during their lives, with remainder in trust for their children, if they should have any, and, if not, for each other. It gives other specified property to the trustee for the benefit of her three daughters, using the same words of remainder, and adding a separate use clause. Then it gives to the same trustee the residue of her estate for the use of all her six children, "in the same way and manner, and under the same and like uses and trusts, as are hereinbefore set forth."

One of the sons died without issue ; does his share of the residue go to the surviving brothers, or to the surviving brothers and sisters ?

The very uncertainty of the meaning, as derived from the will, decides this question in favour of the brothers and sisters, and against the brothers by themselves : for whoever claims against the laws of descent, must show a written title, which we can, with satisfaction, decide to be sufficient. The rule of equality of descent to relatives of the same degree, is so just that the law adopts it when the law is to govern, and prefers it when the law is called upon to interpret.

Besides this, we rather incline to regard the will as declaring this rule. In the first devises the sons and daughters are classed apart for enjoyment and descent. But in the one under consideration, they are all classed together to take one undivided residue together, with cross remainders or *quasi* cross remainders among them all, and we should need to insert words in order to divide

[Lipman's Appeal.]

them here into two classes.   The trusts in the previous clauses can easily be applied to the interests which are here given, and in a very plain way, *reddendo singula singulis*.   The word "respectively" may mean this.   It certainly would seem very natural to say, that the sons and daughters should take by classes, if such were the intention to be expressed.

           DECREE.—This cause came on for hearing at the present term, on the appeal of Mary A. Lipman, Hyman L. Lipman, Jas. Maull, Jr., and Louisa] E. his wife, and Anna A. Lehman, from the decree of the Orphans' Court of Philadelphia county, and was argued by counsel, and in consideration thereof it is ordered and decreed that the said decree be reversed, and that the balance in the said court for distribution, $505.40, shall, after deducting costs, be equally distributed to the surviving sons and daughters of the testatrix, Mary C. Lehman ; and the cause is remitted to the same Orphans' Court, that this decree may be carried into effect.